# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Leonard Deron Seamon,<br><br>        Petitioner,<br><br>v.<br><br>Kent Grandlienard,<br><br>        Respondent. | Case No. 14-cv-1540 (DWF/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Leonard Deron Seamon, Minnesota Correctional Facility–Stillwater, 970 Pickett Street North, Bayport, Minnesota 55003, pro se

Kevin J. Golden, Lockridge & Golden, PLLP, 900 American Boulevard East, Suite 241, Bloomington, Minnesota 55420; and Matthew Frank and James B. Early, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, Minnesota 55101; for Kent Grandlienard

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Leonard Deron Seamon's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 [Doc. No. 1]. Petitioner is incarcerated at the Minnesota Correctional Facility in Bayport, Minnesota. The petition has been referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation. For the reasons set forth below, the Court recommends that the petition be denied and no certificate of appealability be granted.

I.      **Background**

In July 2009, a confidential informant (CI) told Minneapolis Police Officer Kelly

Kasel that he had purchased cocaine from Petitioner at Petitioner's apartment in Fridley,

Minnesota.  *State v. Seamon*, No. A12-1038, 2013 WL 1788498, at *1 (Minn. Ct. App.

Apr. 29, 2013).   Officer Kasel obtained a search warrant, which was executed on July 16,

2009.  *Id.*  Officer Kasel stood outside the apartment during the search.  *Id.*  She saw a

screen fall from a second-floor window, and a black male's bare arm reach out and drop a

plastic shopping bag to the ground.  *Id.*  Petitioner and two females were the only

individuals present inside the apartment.  *Id.*

Officer Kasel recovered the plastic bag and found several smaller bags inside.  *Id.*

Laboratory testing revealed that the smaller bags contained various amounts of cocaine

and marijuana:

> The first bag held ten baggies containing tan chunks of
> cocaine base weighing 2.21 grams, 5.99 grams, 2.91 grams,
> 2.96 grams, 6.10 grams, 5.96 grams, 3.01 grams, 3.02 grams,
> 2.94 grams, and 5.85 grams.  The second bag held tan chunks
> of cocaine base weighing 26.20 grams.  The third bag held
> two baggies containing white chunks of cocaine
> hydrochloride weighing 25.60 grams and 1.06 grams.  The
> fourth bag held one baggie containing tan chunks of cocaine
> weighing 10.49 grams.  The fifth bag held three baggies
> containing tan chunks of cocaine base weighing 5.79 grams,
> 5.86 grams, and 2.80 grams.  The sixth bag contained 81.26
> grams of marijuana.

*Id.*  Police also recovered a .22 caliber semi-automatic rifle from a bedroom in the

apartment.  (Resp't's Attach. 2 (Crim. Compl. at 2, July 17, 2009) [Doc. No. 11-2].)

Petitioner was charged with two counts of first-degree possession of a controlled

substance. (*Id.* at 1.) Count 1 charged him with possession with the intent to sell 10 or more grams of a controlled substance, in violation of Minn. Stat. § 152.021, subd. 1(1), and also included a sentencing enhancement for the possession of a firearm, under Minn. Stat. § 609.11, subd. 5. (*Id.*) Count 2 charged Petitioner with possession of 25 or more grams of a controlled substance, in violation of Minn. Stat. § 152.021, subd. 2(1), and also included a firearm-possession enhancement. (*Id.*) On October 21, 2011, Count 1 was amended to possession of 25 or more grams of a controlled substance while in possession of a firearm, under Minn. Stat. § 152.021, subd. 2(1), and § 609.11, subd. 5. (Resp't's Attach. 8 (Am. Crim. Compl. at 1) [Doc. No. 11-8].) Count 2 was amended to remove the firearm-possession enhancement. (*Id.*)

A separate, second-degree possession charge was already pending against Petitioner in another criminal case, and Petitioner demanded a speedy trial in both cases on March 23, 2011. *Seamon*, 2013 WL 1788498, at *1. A jury trial was held on the second-degree possession charge in April 2011, and Petitioner was found guilty. *Id.*

The first-degree possession charges were scheduled for trial in August 2011, but after several continuances, a bench trial ultimately was held on November 3-4, 2011. *Id.* at *1-2. Petitioner represented himself, with standby counsel. The court found Petitioner not guilty of violating Minn. Stat. § 152.021, subd. 2(1), while in possession of a firearm; but guilty of violating Minn. Stat. § 152.021, subd. 2(1), without the firearm-possession enhancement. Petitioner was sentenced to 114 months imprisonment on March 22, 2012. (Pet. at 1 [Doc. No. 1].)

Petitioner appealed to the Minnesota Court of Appeals, which affirmed the trial

3

court in all respects.  *See Seamon*, 2013 WL 1788498, at *1.  Petitioner sought review by the Minnesota Supreme Court, and his petition was denied on July 16, 2013.  (Pet. at 2.) Petitioner timely filed his § 2254 petition.

Petitioner raises the following grounds for relief in his petition:

(1) The trial court violated the Double Jeopardy Clause by convicting Petitioner of Count 2, a first-degree controlled substance crime under Minn. Stat. § 152.021, subd. 2(1); but acquitting him of Count 1, a crime charged under the same statute that also included a firearm-possession sentencing enhancement.

(2) The trial court violated Petitioner's Fourth Amendment right against unreasonable search and seizure by not suppressing evidence seized pursuant to a search warrant that was not supported by probable cause.

(3) The trial court denied Petitioner his Sixth Amendment right to confront witnesses by refusing to disclose the CI's identity.

(4) The trial court denied Petitioner his Fourteenth Amendment right to due process by not formally arraigning him or entering a plea of guilty or not guilty.

(5) Petitioner was denied due process under the Fourteenth Amendment because the State did not establish beyond a reasonable doubt that he committed the offense of conviction.

(6) Petitioner was denied his Sixth Amendment right to a speedy trial.

## II.    Discussion

Pursuant to 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Habeas relief under § 2254 is warranted in three circumstances: (1) when a state court decision was contrary to clearly established federal law, (2) when a state court decision involved an unreasonable

4

application of clearly established federal law, or (3) when a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." § 2254(d)(1), (2).

### A.      Ground One: Double Jeopardy

Petitioner contends that the trial court violated his right against double jeopardy by acquitting him of Count 1 and convicting him of Count 2.  He argues that both offenses were based on a single act.  Petitioner raised his double jeopardy argument to the Minnesota Court of Appeals in a pro se memorandum (Resp't's Attach. 13 (Appellant's Pro Se Suppl. Br. at 7) [Doc. No. 11-13]) and to the Minnesota Supreme Court in his petition for review (Resp't's Attach. 16 (Pet. Rev. at 3) [Doc. No. 11-16]).

"The fifth amendment proscribes being 'twice put in jeopardy of life or limb' for the same offense."  *United States v. Bass*, 794 F.2d 1305, 1308 (8th Cir. 1986) (quoting U.S. Const. amend. V).  The constitutional safeguard against double jeopardy consists of three separate protections: "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *N. Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).  The Double Jeopardy Clause does not prohibit a state from charging an individual with related offenses and prosecuting them in a single trial.  *See Ohio v. Johnson*, 467 U.S. 493, 500-01 (1984).

Here, Petitioner was not prosecuted a second time for an offense after being acquitted of the same offense, nor was he prosecuted a second time for an offense after

being convicted of the same offense, nor was he punished more than once for the same offense.  Simply put, Petitioner was not subjected to more than one prosecution or more than one punishment.  Therefore, double jeopardy is not implicated.

Petitioner nonetheless suggests that double jeopardy was violated when the trial court found him not guilty of an offense with the same statutory elements as the offense of conviction.  Petitioner overlooks, however, the firearm-possession enhancement included in Count 1.  It is clear from the trial court's findings of fact, conclusions of law, and verdict that the State proved beyond a reasonable doubt all elements of § 152.021, subd. 2(1).  (Resp't's Attach. 9 (Order at 6, Dec. 6, 2011) [Doc. No. 11-9].)  What the State failed to prove was "that, at the time of the commission of the offense, [Petitioner] was in possession of a firearm," under Minn. Stat. § 609.11, subd. 5.  (*Id.*)  For this sole reason, the trial court found Petitioner not guilty of Count 1.  The court did not find any element of Minn. Stat. § 152.021, subd. 2(1), lacking.

In sum, the trial court did not put Petitioner in jeopardy twice by acquitting him of Count 1 and convicting him of Count 2.  Petitioner was convicted of and sentenced on only one offense in a single proceeding, and he did not receive multiple punishments for the same offense.

### B.    Ground Two: Fourth Amendment Violation

Petitioner argues that the supporting affidavit for the search warrant executed on July 16, 2009, did not establish probable cause for the search, in violation of the Fourth Amendment.  Specifically, he submits in his petition that the affidavit did not contain sufficient information about the CI's credibility and reliability, and did not establish that

a controlled purchase had actually occurred between Petitioner and the CI.

Before trial, Petitioner filed a motion to suppress the evidence seized pursuant to the warrant. The trial court found that, under the totality of the circumstances, the warrant was supported by probable cause. (Resp't's Attach. 5 (Order at 5, Feb. 25, 2011) [Doc. No. 11-5].) Petitioner raised the issue before the Minnesota Court of Appeals and the Minnesota Supreme Court.

A federal court considering a § 2254 habeas petition "alleging a Fourth Amendment violation should abstain from reviewing the state court records to determine if the state's factual findings are fairly supported by the record as a whole." *Willett v. Lockhart*, 37 F.3d 1265, 1270 (8th Cir. 1994). The sole inquiry is whether "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Eighth Circuit Court of Appeals has adopted a two-part test to determine whether a state provided an opportunity for full and fair litigation of a Fourth Amendment claim:

> [R]eview of fourth amendment claims in habeas petitions [is] undertaken . . .: (a) if the state has provided *no corrective procedures at all* to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an *unconscionable breakdown in the underlying process.*

*Willett v. Lockhart*, 37 F.3d 1265, 1271 (8th Cir. 1994) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)) (alterations and emphases in *Willett*). The first question is simple: "either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not)." *Id.* at 1272. Under the second

7

part of the test, "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Capellan*, 975 F.2d at 72).

Petitioner does not argue he was deprived of a full and fair opportunity to litigate his Fourth Amendment claim, and he did, in fact, take full advantage of that opportunity. Minnesota has an established system for raising a Fourth Amendment claim at the trial level through a motion to suppress evidence, *see Brooks v. Reiser*, No. 14-cv-3007 (SRN/JSM), 2015 WL 321456, at *10 (D. Minn. Jan. 23, 2015), and a remedial appellate scheme to correct any errors by the trial courts, *see Chavez*, 497 F.3d at 802; *Brooks*, 2015 WL 321456, at *10.  Thus, the first part of the test is satisfied.

As to the second factor, Petitioner simply disagrees with the trial court's decision not to suppress the evidence.  He does not allege, nor does the record show, that he was precluded from using the state's corrective process or that there was a breakdown in the process.  Consequently, Petitioner's Fourth Amendment claim is barred by *Stone*.

### C.      Ground Three:  Sixth Amendment Right of Confrontation

Petitioner next claims that he was denied his Sixth Amendment right to confront the CI, who, according to Petitioner, was a material witness to and actual participant in the charged offenses.  Petitioner raised this claim at all levels of state court review.

Before trial, Petitioner's attorney filed a motion for the disclosure of the CI's identity on Sixth Amendment grounds.  The trial court denied the motion upon finding Petitioner had not demonstrated "(1) that the CI will be a material witness; (2) that the CI's testimony will be used; (3) that the state's evidence is suspect; or (4) that the CI's

testimony may disclose entrapment."  (Order at 6, Feb. 25, 2011.)  Rather, the only basis

for the request was "to investigate the reliability of the CI."  (*Id.*)  According to the

record before the Court, the CI did not testify at Petitioner's trial, nor was any

information provided by the CI introduced as hearsay or other evidence during the trial.

Petitioner does not argue otherwise.  As Respondent describes the CI's participation,

> The CI contributed information and participated in the controlled buy that
> formed probable cause for the search warrant[;] however[,] that is where
> the CI's role ceased.  The CI did not participate in any way in the execution
> of the search warrant, the identification of the Petitioner on that day, or the
> discovery of controlled substances during the execution of the search
> warrant.

(Resp't's Mem. at 28[1] [Doc. No. 10].)

The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to be confronted with the witnesses against him."

U.S. Const. amend VI.  The Confrontation Clause "applies to 'witnesses' against the

accused—in other words, those who 'bear testimony.'"  *Crawford v. Washington*,

541 U.S. 36, 51 (2004); *see also United States v. Drapeau*, 414 F.3d 869, 875 (8th Cir.

2005) ("The Confrontation Clause of the Sixth Amendment guarantees a defendant's

right to cross-examine witnesses and, through cross examination, to expose the

motivation of witnesses in testifying.").  A Confrontation Clause claim based on a state's

failure to produce an informant to testify at trial is "absolutely devoid of merit."

*Cooper v. California*, 386 U.S. 58, 62 n.2 (1967).

In Petitioner's case, the CI did not testify at the trial, nor was the substance of the

---

[1]  When citing to Respondent's memorandum, the Court will cite to the page number
assigned by the ECF system, because the memorandum inexplicably begins with page 12.

information he conveyed to law enforcement introduced as evidence. Consequently, Petitioner's Confrontation Clause claim fails.

Petitioner relatedly argues, in his reply memorandum, that the State was obligated to disclose the CI's identity pursuant to *Roviaro v. United States*, 353 U.S. 53 (1957). (Pet'r's Reply at 3 [Doc. No. 16].) The United States Supreme Court held in *Roviaro* that the government has a privilege to withhold the identity of informants, except when disclosure of an informant's identity would be "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60-61. The defendant must demonstrate that the disclosure of an informant's identity "is material to the outcome of his case; in other words, that disclosure is vital to ensure a fair trial." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001) (citations omitted). Where an informant is a mere "tipster," that is, "someone who conveys information to the government but who does not participate in the offense," the identity of the informant is not material to the defense. *Id.*

Petitioner has not shown that the CI was a material witness. Although the CI provided information that contributed to the finding of probable cause for the search warrant, the CI did not witness or participate in the charged offenses (possession—not distribution—of a controlled substance), nor was the CI present during the execution of the warrant. The CI was simply a tipster, whose identity was not material to Petitioner's defense. *See United States v. Skramstad*, 649 F.2d 1259, 1265 (8th Cir. 1981) (citations omitted). Consequently, the trial court's decision not to order disclosure of the CI's identity was not contrary to or an unreasonable application of clearly established federal

10

law, nor was the decision based on an unreasonable determination of the facts.

### D.   Ground Four: Due Process Violation Based on Lack of Formal Arraignment

Petitioner contends he was denied due process of law under the Fourteenth Amendment, because he was never formally arraigned or asked to enter a plea of guilty or not guilty.  He theorizes this deprived the trial court of jurisdiction to enter a judgment against him.  Petitioner raised this argument at all levels of state review.

Petitioner was first advised of the charges filed against him at his first appearance on July 17, 2009.  (*See* Resp't's Mem. at 30.)  At his August 19, 2009, arraignment, he waived a reading of the charges but did not enter a plea.  (*See* Pet. at 10; Resp't's Mem. at 30.)  At omnibus hearings on February 17 and October 19, 2011, Petitioner was again advised of his rights and the accusations against him.  (*See* Resp't's Mem. at 30.)  After the charges were amended on October 21, 2011, the trial court read and explained the new charges to Petitioner on October 31, 2011.  (*See id.* at 30-31.)  Three days later, on the first day of trial,

> Petitioner told the court: "I have made a plea – I have never made a plea of guilty or not guilty. I've always been innocent."  The trial court ruled: "You've indicated that you want to plead innocent.  In Minnesota you can plead guilty or not guilty.  I'm going to interpret that as a plea of not guilty."

(*Id.* at 31 (internal record citations omitted).)  Petitioner does not dispute that he was advised several times of the charges against him, nor does he disagree with Respondent's account of the relevant proceedings.  Petitioner adds in his petition that "the trial proceeded, with objections by Mr. Seamon . . . as if he had entered a formal plea of not

guilty." (Pet. at 10.) He further states in his reply memorandum, "I have never made a plea of guilty or not guilty, I've always been innocent." (Reply at 7.)

"The absence of a formal arraignment is of little consequence." *United States v. Reynolds*, 781 F.2d 135, 136 n.2 (8th Cir. 1986) (citing *Garland v. Washington*, 232 U.S. 642, 645 (1914)). As long as the defendant "had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution," the lack of a formal arraignment does not offend due process. *Garland*, 232 U.S. at 645.

The Court concludes that Petitioner had adequate notice of the accusations against him, and indeed, Petitioner does not argue otherwise. He was notified of the original charges on several occasions, and the amended charges on October 31, 2011.

With respect to Petitioner's specific argument that he was never formally arraigned or asked to enter a plea, the record does not support this assertion. As Petitioner concedes in his reply memorandum, the trial court asked Petitioner during a hearing on the first day of trial to enter a plea to the amended charges. (Reply at 7.) Petitioner said he was innocent, and the trial court interpreted his statement as a plea of not guilty. Petitioner does not argue that this interpretation deprived him of an adequate opportunity to defend himself, and the Court finds that it did not. Both the Minnesota Rules of Criminal Procedure and the Federal Rules of Criminal Procedure direct a court to enter a plea of not guilty if the defendant refuses to enter a plea. Minn. R. Crim. P. 14.02, subd. 4; Fed. R. Crim. P. 11(a)(4). Although it is common at an arraignment to ask a defendant how he pleads to the charges against him, it is not required by due process as long as he was given sufficient notice of the charges and a sufficient

opportunity to defend himself.  Further, it is well-established that a defendant is innocent until proven guilty, and the lack of a formal entry of a "not guilty" plea does nothing to change that presumption.

In conclusion, even if Petitioner was never formally arraigned or asked to enter a plea, there was no violation of due process because Petitioner was sufficiently notified of the charges against him and was given a full and adequate opportunity to defend himself at trial.

### E.      Ground Five: Due Process Violations Based on State's Burden of Proof

Petitioner argues that the State failed to prove beyond a reasonable doubt every essential element of the offense of conviction.  He challenges:  (1) the accreditation of the laboratory that tested the controlled substances; (2) the sufficiency of the evidence concerning whether the controlled substance was a "mixture" containing cocaine; (3) the element of actual knowledge of the nature of the controlled substance; and (4) the element of possession or constructive possession of the controlled substance.

### 1.      Accreditation of the Laboratory

Petitioner asserts that the laboratory where the seized substances were tested was unaccredited, which violated due process.  He raised this claim at both levels of state appellate review.  Petitioner does not provide any argument or refer to any clearly established federal law to support his position that the admission of test results from an unaccredited laboratory violates due process.  He relies simply on the broad concept of due process.  The Court will treat Petitioner's argument as a challenge to the admission of the laboratory test results.

The trial court made the following findings in its Findings of Fact, Conclusions of Law, Verdicts, and Order.  (Order at 3-4, Dec. 6, 2011.)  The plastic bag seized from Petitioner's apartment was delivered to City of Minneapolis Chemist Brenda Spandl.  Spandl has a bachelor of science degree in chemistry, and had been employed by the City of Minneapolis as a chemist for nine years.  She performed drug testing as 50% of her job duties.  The state court found Spandl properly qualified as an expert witness in the field of chemical testing of controlled substances.  Spandl analyzed the contents of all the individual baggies found inside the plastic shopping bag that was dropped from Petitioner's window.  The individual baggies contained cocaine base, cocaine hydrochloride,[2] cocaine, and marijuana, among other substances.  The total quantity of substances containing cocaine exceeded 113 grams.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'"  *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (quoting *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988)).  Due process is violated by the admission of evidence only when the admission is "so extremely unfair" that it violates fundamental concepts of fairness and justice.  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (citations omitted); *see Manning-El v. Wyrick*,

---

[2]  Spandl testified, and Petitioner does not dispute, that cocaine hydrochloride is commonly known as cocaine.  (*See* Resp't's Mem. at 12.)

738 F.2d 321, 323 (8th Cir. 1984) ("In order to establish denial of due process, [petitioner] must prove that the asserted error was so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived him of fundamental fairness.").

The Court finds that the admission of the laboratory test results was not unfair or unjust. The trial court found Spandl a qualified expert witness based on her education and experience, which was supported by the record. Petitioner offers no reason or evidence to call into doubt Spandl's testing methods or results, and nothing in the record indicates they were unacceptable or inaccurate. Consequently, the admission of the laboratory results did not violate due process.

### 2.   Whether the Substances Were a "Mixture" Containing Cocaine

Petitioner argues that State did not establish through Spandl's testimony or otherwise that the controlled substances were a "mixture" containing cocaine. Thus, he submits, the State failed to prove he unlawfully possessed "one or more *mixtures* of a total weight of 25 grams or more containing cocaine, heroin, or methamphetamine." *See* Minn. Stat. § 152.021, subd. 2(1) (emphasis added).

Petitioner's argument is unfounded. Spandl's report reflected that she detected cocaine base and cocaine hydrochloride (otherwise known as cocaine) in the substances she tested. The statutory definition of "mixture" is "a preparation, compound, mixture, or substance containing a controlled substance, regardless of purity." Minn. Stat. § 152.01, subd. 9a. The statutory definition of "cocaine" is

> coca leaves and any salt, compound, derivative, or preparation of coca
> leaves, including cocaine and ecgonine, the salts and isomers of cocaine
> and ecgonine, and the salts of their isomers and any salt, compound,

> derivative, or preparation thereof that is chemically equivalent or identical
> with any of those substances, except decocainized coca leaves or extraction
> of coca leaves, which extractions do not contain cocaine or ecgonine.

*Id.* § 152.01, subd. 3a.  By its very name, and as a measure of common sense, cocaine

base is derived from or prepared with cocaine.  In addition, Spandl testified that cocaine

hydrochloride is the same substance as cocaine.  To the extent the substances tested were

not pure cocaine, they contained some compound, derivative, or preparation—in other

words, a mixture—of cocaine, and under § 152.01, subd. 9a, the purity of the substances

is immaterial.  That Spandl did not explicitly testify that the substances she tested were a

"mixture" containing cocaine did not fatally infect the trial or deprive Petitioner of

fundamental fairness so as to constitute a violation of due process.

### 3.       Actual Knowledge of the Nature of the Controlled Substance

Petitioner submits there was insufficient evidence to prove he had actual

knowledge that the plastic shopping bag dropped from his apartment window contained

cocaine.  Specifically, he contends that "whoever" dropped the bag could have believed it

contained only marijuana.  Petitioner presented this claim at all state levels of review.

This argument raises a question of evidentiary sufficiency under the Due Process

Clause.  In this context, the Due Process Clause "protects a defendant in a criminal case

against conviction 'except upon proof beyond a reasonable doubt of every fact necessary

to constitute the crime with which he is charged.'"  *Jackson v. Virginia*, 443 U.S. 307,

315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  The question for this

Court, on habeas review, "is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

16

elements of the crime beyond a reasonable doubt." *Id.* (citation omitted).

The trial court specifically found credible Officer Kasel's and Officer Nelson's testimony that, during the execution of the search warrant at Petitioner's apartment, they saw from their vantage point at the front corner of the building a window screen drop from a window of the apartment. (Order at 2, Dec. 6, 2011.) They further observed a black male's arm extend from the open window and drop a white plastic shopping bag to the ground. (*Id.*) A box of baking soda flew out the window immediately after the bag. (*Id.*) The contents of the plastic bag later tested positive for cocaine base, cocaine, and marijuana. (*Id.* at 3-4.)

Three individuals were in the apartment during the search: Petitioner, a woman identified as Labrena Yobbe, and a woman identified as Cynthia Connor. (*Id.* at 4.) Petitioner was described by officers on the scene as a stocky, black male of medium complexion, with no jewelry on his right hand and a watch and ring on his left hand. (*Id.*) His forearms were bare, and his shirt was spotted with a white powdery substance resembling baking soda. (*Id.*) Yobbe is a thin, black woman, whose forearms were bare, but who had a ring on each of her fingers and sparkly, multicolored fingernail polish on her long fingernails. (*Id.*) Connor is a "diminutive" black woman, who wore a long-sleeved denim jacket at the time she was detained during the search. (*Id.*) She wore no jewelry on her hands, and her fingernails were short and unpainted. (*Id.*)

The trial court concluded from the physical descriptions of the apartment's occupants that the forearm extending from the window could only have been Petitioner's. (*Id.*) The court further concluded that Petitioner's act of dropping the bag of cocaine

from the window at the time the SWAT team entered his apartment demonstrated he knew the substance was cocaine.  (*Id.* at 5.)

Under Minnesota law, "[k]nowledge, like intent, usually must be inferred from the evidence."  *State v. Mattson*, 359 N.W.2d 616, 617 (Minn. 1984).  Circumstantial evidence is sufficient to prove that a defendant knew the nature of a substance.  *Id.*

Viewing the evidence in the light most favorable to the State, as the Court must on federal habeas review, the Court concludes that a rational trier of fact could have found beyond a reasonable doubt that Petitioner knew the plastic bag dropped from the window contained cocaine.  It was reasonable for the trial court to infer from the evidence that it was Petitioner's arm that extended from the window and dropped the plastic bag. Petitioner dropped the bag immediately after the SWAT team entered the apartment, which supports an inference that Petitioner knew the bag contained contraband or other evidence of a crime.  The bag was followed shortly by a box of baking soda, which is frequently used in manufacturing cocaine base.[3]  When Petitioner was detained, his shirt was spotted with a white powdery substance resembling baking soda.  Subsequent laboratory testing revealed that the larger plastic bag contained several smaller baggies of cocaine, cocaine base, and marijuana.  The total quantity of cocaine in the large shopping bag and the packaging of the cocaine into several smaller baggies, when compared to the one baggie of marijuana in the plastic bag, also supports an inference that Petitioner knew it contained cocaine.  When all of these facts are considered together, the trial court's

---

[3]  Petitioner does not dispute Spandl's testimony that baking soda is often mixed with cocaine to produce cocaine base.  (*See* Resp't's Mem. at 12.)

finding that Petitioner knew the plastic bag dropped from the window contained cocaine is supported by sufficient evidence.

### 4. Possession or Constructive Possession

Petitioner next contends there was insufficient evidence to prove beyond a reasonable doubt that he possessed or constructively possessed the cocaine. This issue is closely related to the element of knowledge, and the Court incorporates here the facts, legal standards, and discussion of Part II.E.3.

Under Minnesota law, "to convict a defendant of unlawful possession of a controlled substance, the state must prove that defendant consciously possessed, either physically or constructively, the substance." *State v. Florine*, 226 N.W.2d 609, 610 (Minn. 1975). The prosecution must show (1) "that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access," or (2) "that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." *Id.* at 611.

Petitioner first challenges the credibility of Officers Kasel and Nelson. However, in reviewing the sufficiency of the evidence on federal habeas review, the Court is not permitted to conduct an independent assessment of witness credibility; that is a task reserved to the finder of fact, in this case, the trial court. *See Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000).

Petitioner next argues that the apartment window from which the bag was dropped was not under his exclusive control. It is undisputed that Petitioner, Conner, and Yobbe

19

were all inside the apartment when the search warrant was executed.  However, as the Minnesota Court of Appeals determined, it was not necessary for the trial court to find that Petitioner exerted exclusive control over the apartment or even the bedroom from which the bag was dropped; the issue is whether Petitioner "constructively possessed the bag of drugs."  *Seamon*, 2013 WL 1788498, at *3.

Viewing the evidence in the light most favorable to the State, the Court finds that a rational trier of fact could have found beyond a reasonable doubt that Petitioner constructively possessed the bag of drugs.  The trial court reasonably inferred from the evidence and testimony at trial that it was Petitioner who dropped the bag from the window.  The only reasonable inference to be made from this finding is that Petitioner consciously exercised dominion and control over the bag when he dropped it.  As such, he constructively possessed the cocaine inside the bag.

### F.        Ground Six: Sixth Amendment Right to a Speedy Trial

Petitioner claims he was denied his right to a speedy trial.  He was originally charged with the first-degree controlled substance crimes on July 17, 2009.  Numerous continuances between that date and March 23, 2011, were requested by both parties and granted without objection.  Petitioner first formally demanded a speedy trial at a pretrial hearing on March 23, 2011.

After Petitioner's separate, second-degree controlled-substance case was tried in April 2011, Petitioner's privately-retained counsel and the State agreed to a trial date of August 22, 2011, on the first-degree controlled-substance charges.  Petitioner's lawyer withdrew from representation on June 6, 2011, based on an irreparable breakdown in the

attorney-client relationship.  On August 4 and 10, 2011, the trial court held hearings on the State's motions to continue the trial due to an unavailable witness.  Petitioner, representing himself, opposed both motions.  The court denied the first motion due to insufficient evidence about the witness's availability, but granted the second motion. The trial court set a new trial date of October 31, 2011, so that the State could locate its witness, to accommodate the court's congested calendar, and because Petitioner was already incarcerated on the second-degree controlled-substance conviction.  Trial commenced on November 3, 2011.

A court considers four factors in assessing whether a defendant's right to a speedy trial has been violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  "The length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*  As to the reason for the delay, a deliberate attempt to delay the trial for tactical reasons should weigh heavily against the State, but reasons such as an attorney's negligence or an overburdened court system are "more neutral." *Id.* at 531.  A missing witness is a valid reason for delay. *Id.*  Regarding the third factor, a defendant's actual assertion of his speedy trial right is strongly determinative of whether his right was deprived. *Id.*  Finally, prejudice is assessed in light of the three interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532.  The third of

these latter factors is the most significant.  *Id.*

None of the *Barker* factors are necessary, or alone sufficient, to find a deprivation of a speedy trial right.  *Id.* at 533.  "Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  *Id.*

### 1.    Presumption of Prejudice

The Minnesota Court of Appeals found that the delay in Petitioner's trial was presumptively prejudicial because the trial occurred more than sixty days from the date he demanded a speedy trial.  *Seamon*, 2013 WL 1788498, at *4.  After accounting for excludable time, the court determined that Petitioner's trial began eighty-five days after his demand.  *Id.*  While this time was deemed presumptively prejudicial under Minnesota law, the Court must determine whether the delay was presumptively prejudicial under clearly established federal law.

"[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences."  *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002).  The United States Supreme Court has indicated that a delay of a year between accusation and trial is presumptively prejudicial.  *Doggett v. United States*, 505 U.S. at 647, 652 n.1 (1992).  The term "presumptively prejudicial" in this context "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry."  *Id.*

In Petitioner's case, more than two years passed between the date the charges were

filed and his trial.[4]  This raises a presumption of prejudice sufficient to trigger

consideration of the other *Barker* factors.

### 2.      Reason for the Delay

The reason for the delay between July 17, 2009, and August 4, 2011, was

primarily the numerous continuances requested by Petitioner's privately-retained counsel.

(*See* Resp't's Mem. at 4-5.)  Valid continuances requested by a defendant are justifiable

reasons for delay.  *United States v. Summage*, No. 3:05-CR-0576-JAJ, 2008 WL

2064109, at *7 (S.D. Iowa May 13, 2008).  Similarly, a delay caused by the defendant or

his counsel weighs against the defendant.  *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009).

Petitioner's counsel requested a continuance of the initial appearance from August 6,

2009, to August 19, 2009; a continuance of the trial date from January 18, 2010, to

May 17, 2010; and a continuance of the omnibus hearing on November 1, 2010, to

February 17, 2011 (based on counsel's failure to file proper suppression motions), and

a corresponding continuance of the trial date from November 1, 2010, to April 4, 2011.

(*See* Resp't's Mem. at 4.)  Petitioner does not dispute that his attorney requested these

continuances and the requests weigh against Petitioner.  Petitioner's counsel, the State,

and the trial court all agreed to continue the trial from April 6, 2011, to August 22, 2011.

The State also requested a continuance of the trial date, which Petitioner did not

oppose, from May 18, 2010, to October 4, 2010.  "A deliberate attempt to delay the trial

in order to hamper the defense should be weighted heavily against the government."

---

[4]  The Court will take into account the timing of Petitioner's speedy trial demand in the
discussion of the third *Barker* factor.

*Barker*, 407 U.S. at 531.  However, there is no indication, and Petitioner does not argue, that the continuance from May 18, 2010, to October 4, 2010, was a deliberate attempt to delay the trial for the purpose of hampering Petitioner's defense.  Nor does Petitioner contend the State acted negligently.  *See id.* (finding the state's negligence a "more neutral" reason that should not be weighed heavily).  Accordingly, this continuance weighs only slightly in Petitioner's favor.

The trial court continued the trial date for administrative reasons from October 1, 2010, to November 1, 2010, on its own accord.  This is a relatively neutral reason for a delay and should not weigh heavily against the State, although it "should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  *Id.*  The trial court later continued the trial while Petitioner was tried on the separate, second-degree charges in April 2011.  A delay caused by separate charges should not be counted against the State.  *See United States v. Perez-Perez*, 337 F.3d 990, 996 (8th Cir. 2003).  Moreover, Petitioner agreed to the continuance.  The trial court continued the trial a third time from the end of September to October 31, 2011, based on the congestion of the court's calendar.  In total, only the first and third continuances unilaterally imposed by the trial court should favor Petitioner, and then only minimally.

The reason for the delay between August 4, 2011, and the end of September was the unavailability of a key witness—the State's forensic witness—who could not be located despite the State's diligent efforts.  *Seamon*, 2013 WL 1788498, at *4-5. A missing witness is a valid reason for an appropriate delay.  *Barker*, 407 U.S. at 531.

Here, a delay of almost two months was not inappropriate.  The witness no longer

worked at the laboratory, and the laboratory refused to provide the witness's contact

information.  In addition, according to the laboratory, the witness would be out of the

state until the end of September.  Thus, this delay does not weigh against the State.

On the whole, the Court finds that the numerous continuances requested by and

agreed to by Petitioner's privately-retained trial counsel, the "more neutral" delays

requested by the State or imposed by the trial court, and Petitioner's lack of

contemporaneous objection to any of the continuances granted before August 4, 2011,

make this factor neutral.

### 3.       Petitioner's Assertion of the Right

Petitioner was charged with the first-degree controlled substance offenses on July

17, 2009, but he did not demand a speedy trial until twenty months later, on March 23,

2011.  A defendant effectively acquiesces in a delay by failing to timely assert his speedy

trial right.  *United States v. Hessman*, No. CR02-3038-MWB, 2005 WL 1206524, at *7

(N.D. Iowa May 20, 2005), *R. & R. adopted*, 2005 WL 1417108 (N.D. Iowa June 16,

2005).  Thus, the Court limits further consideration of the third *Barker* factor to the

period of time from March 23, 2011, to November 3, 2011.

Although Petitioner demanded a speedy trial on March 23, 2011, the trial court

and Minnesota Court of Appeals found that he waived that right on April 6, 2011, when

his counsel agreed to a new trial date of August 22, 2011.  *Seamon*, 2013 WL 1788498, at

*5 (citing *State v. Curtis*, 393 N.W.2d 10, 12 (Minn. App. 1986)); (*see* Resp't's Attach.

11 (Appellant's Br. at 1) [Doc. No. 11-11]).  The Minnesota Court of Appeals relied

solely on state law in support of its finding, and Petitioner does not argue that the finding violated clearly established federal law.

Rather, Petitioner argues, for the first time on federal habeas review and only in his reply memorandum, that any waiver made on April 6, 2011, was not knowing, intelligent, or voluntary.  (Reply at 16.)  Petitioner did not raise this theory, or the federal nature of this claim, before the Minnesota Court of Appeals or the Minnesota Supreme Court, however.  (*See* Appellant's Br.; Appellant's Pro Se Suppl. Br.; Pet. Rev.)

A state prisoner such as Petitioner must exhaust all state court remedies by fairly presenting his federal constitutional claims to each tier of state appellate review before seeking § 2254 relief in federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition."  *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996) (quotation omitted).  If the state courts would no longer review the claim, it is procedurally defaulted.  In Minnesota, "where a direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."  *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976).  There are two exceptions to the *Knaffla* rule: (1) when a claim is novel, and (2) when "the interests of fairness and justice" would demand review.  *Andersen v. State*, 830 N.W.2d 1, 8 (Minn. 2013).  Petitioner's challenge to the adequacy of the April 6, 2011, waiver is procedurally defaulted, because Petitioner failed to raise that specific theory in the state courts.  Furthermore, neither of the *Knaffla* exceptions apply here.

26

Claims procedurally barred under state law are exhausted for the purposes of federal habeas review. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). In this circumstance, the Court must determine whether Petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or whether the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *See McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997) (citing *Coleman,* 501 U.S. at 750).

To establish cause for the default, Petitioner must show that some external, objective factor impeded his ability to comply with the *Knaffla* rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner has made no such argument or showing. A court need not consider prejudice unless the petitioner demonstrates cause. *McCall*, 114 F.3d at 758. Thus, the Court proceeds to the fundamental miscarriage of justice exception. This exception is available only when a petitioner establishes that a constitutional violation likely caused the conviction of an innocent person. *Id*. (quoting *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995)). Petitioner has made no such argument or showing. Accordingly, the Court cannot excuse the procedural default and reach the merits of whether Petitioner's alleged waiver of his speedy trial right on April 6, 2011, was knowing, intelligent, and voluntary. *See Carney v. Fabian*, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

The Court turns next to Petitioner's argument that he reasserted his right to a speedy trial on August 4, 2011.  The Minnesota Court of Appeals found the reassertion invalid, characterizing Petitioner's statement to the court as "merely a response to a factual inquiry by the court regarding whether the right had ever been asserted" and finding that Petitioner "did not indicate that he wanted to reassert the right."  *Seamon*, 2013 WL 1788498, at *6.  Given Petitioner's pro se status at that time, and that a reasonable assertion of the right may be construed from the circumstances, *see Douglas v. Cathel*, 456 F.3d 403, 418 (3d Cir. 2006), this Court will assume *arguendo* that Petitioner reasserted his right to a speedy trial on August 4, 2011.  But in any event, the Minnesota Court of Appeals determined that Petitioner validly reasserted his right to a speedy trial six days later, on August 10, 2011.  *Seamon*, 2013 WL 1788498, at *6.  The six-day gap between August 4 and August 6 is of little moment to the Court's Sixth Amendment analysis.  Petitioner also reasserted his speedy trial demand on October 19, 2011.  (Appellant's Br. at 1.)

In total, the Court will assume that Petitioner asserted his right to a speedy trial on March 23, 2011; August 4, 2011; August 10, 2011; and October 19, 2011.  There is no dispute that he clearly asserted his right to a speedy trial.  However, the Court is also mindful there was a long period of time from April 6, 2011, to at least August 4, 2011, during which, the state courts found, Petitioner waived his right to a speedy trial.  Petitioner's challenge to the validity of that waiver is procedurally defaulted, and so the Court must accept the state courts' determination that the waiver was valid.  Based on all the circumstances, the Court finds this factor weighs in favor of Petitioner, but not

strongly.

### 4.    Prejudice

Prejudice caused by the delay is the final *Barker* factor for the Court to consider. The first interest protected by this factor is the prevention of oppressive pretrial incarceration.  *Barker*, 407 U.S. at 532.  Here, Petitioner was either released on bond or incarcerated between March 23, 2011, and his trial.  He was released on bond on July 17, 2009, and remained on bond until after his April 2011 trial, when he violated his bond conditions by testing positive for cocaine and THC.  (*See* Resp't's Mem. at 4-5.) Petitioner was then held without bail pending his sentencing on the second-degree controlled substance conviction.  (*See id.* at 5.)  According to the Minnesota Department of Corrections Offender Locator service, Petitioner was incarcerated on June 6, 2011, on the second-degree controlled substance conviction.  *See* https://coms.doc.state.mn.us/PublicViewer/Inmate.asp?OID=201877 (last visited  Sept. 9, 2015).  When a defendant is already incarcerated on a separate conviction, a delay causes little, if any, prejudice.  *Wright v. Lockhart*, 854 F.2d 309, 312 (8th Cir. 1988).  Because Petitioner was either released on bond or incarcerated pursuant to a separate conviction through his trial date of November 3, 2011, the interest of preventing oppressive pretrial incarceration was fully protected.

With respect to the second interest, anxiety and concern "are undoubtedly present to some degree in every case . . . .  However, that alone does not establish prejudice where . . . the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances."  *Morris v. Wyrick*, 516 F.2d 1387, 1391 (8th Cir.

1975).  Here, Petitioner did not evince any more anxiety or concern than a typical

defendant facing trial, or identify specific instances when the delay weighed particularly

heavy on him.  Thus, this interest was not affected by the delay.

Finally, Petitioner argues that the third interest, possible impairment of his

defense, was not protected because he was not represented by counsel after his privately-

retained lawyer withdrew from representation.  His attorney withdrew on June 6, 2011.

Petitioner was represented when he entered his demand for a speedy trial on March 23,

2011; during his April 2011 trial; and when he, through his counsel, agreed to the August

22, 2011, trial date.  Any delay that occurred or was agreed to through August 22, 2011,

is attributable to Petitioner's counsel, not to the fact that Petitioner was not represented

by counsel.

After his counsel withdrew, Petitioner did not advise the Court of his pro se status

or seek representation prior to the August 2011 hearings.  At the August 1 hearing, he

advised the trial court of his speedy trial demand made in March, and at the August 10

hearing, he unequivocally reasserted his speedy trial demand.  He did not request

appointment of counsel or time to retain counsel.  In fact, Petitioner told the court he did

not want to be represented by counsel.  During the October 19, 2011, pretrial hearing, the

trial court warned Petitioner about the disadvantages of self-representation and offered

him time to obtain a public defender.  *Seamon*, 2013 WL 1788498, at *7.  Petitioner

declined and stated, "I'd rather be more in control of the court trial procedure."  *Id.*

The Court finds that Petitioner's trial was not delayed due to the withdrawal of his

lawyer or his pro se status.  Indeed, it was Petitioner's attorney who agreed to numerous

continuances and the August 22, 2011, trial date, before he withdrew.  Any delays after

that date were attributable to the unavailability of the State's witness and the court's busy

calendar, not to Petitioner's self-representation. In light of those reasons, it was unlikely

that representation by an attorney would have resulted in a quicker trial.  Furthermore,

any delays that occurred after counsel's withdrawal did not impair Petitioner's defense.

Petitioner appeared at hearings, objected to motions, reasserted his speedy trial demand,

and moved to dismiss the charges based on a speedy trial violation.  Petitioner

represented himself fully and vigorously throughout the proceedings, and he does not

argue that he was unable to present witnesses or evidence at trial because of any delay.

The Court concludes that Petitioner was not prejudiced by the delay, and this

factor weighs against him.

### 5.    Conclusion

On balance, the delays in Petitioner's case did not deprive him of the right to a

speedy trial.  The time period from accusation to trial exceeded two years, which

triggered the *Barker* analysis.  However, Petitioner did not demand a speedy trial until

March 23, 2011.  Most of the continuances of the trial date were requested by Petitioner's

privately-retained counsel, while the delays requested by the State or imposed by the trial

court on its own accord were for relatively neutral reasons.  Petitioner asserted his right to

a speedy trial at least four times, but this is tempered somewhat by the numerous

continuances his counsel requested and the alleged waiver of the right from April 6,

2011, to August 4, 2011.  Finally, and most significantly on the facts at hand, Petitioner

was not at all prejudiced by the delay.  All three interests that the right to a speedy trial

was designed to protect were protected.  Thus, the fourth *Barker* factor strongly

counterbalances the first and third factors indicating a deprivation of the right.  All

considered, the Court concludes that Petitioner was not deprived of his Sixth Amendment

right to a speedy trial, and thus, he should not be granted habeas relief on this claim.

### G.    Certificate of Appealability

Before appealing a final ruling on a federal habeas petition, a state prisoner must be

granted a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P.

22(b)(1).  The Court cannot grant such a certificate unless "the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

applicant must show that the issues to be raised on appeal are "debatable among reasonable

jurists," that different courts "could resolve the issues differently," or that the issues

otherwise "deserve further proceedings."  *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir.

1994).

The Court finds it unlikely that any other court, including the Eighth Circuit Court of

Appeals, would decide Petitioner's claims any differently than recommended here.

Petitioner has not identified, and the Court cannot independently discern, anything novel,

noteworthy, or worrisome about this case that warrants appellate review.  The Court

therefore recommends that Petitioner not be granted a COA in this matter.

## III.    Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.    Leonard Deron Seamon's Petition for Writ of Habeas Corpus [Doc. No. 1] be

**DENIED**;

2.      A certificate of appealability **NOT BE GRANTED**; and

3.      **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: September 15, 2015

 _s/ Hildy Bowbeer_
HILDY BOWBEER
United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.